# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **PEARL HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:14-cv-01916** |
| **v.** | ) | **Judge Campbell / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on March 8, 2011, originally alleging that she had been disabled since June 30, 2009,[1] due to rheumatoid arthritis. Docket No. 10, Attachment ("TR"), TR 142-50, 151-59, 187. Plaintiff's applications were denied both initially (TR 74, 75) and upon reconsideration (TR 76, 77). Plaintiff subsequently requested (TR 95-102) and received (TR 30-73) a hearing. Plaintiff's hearing was conducted on March 26, 2013, by Administrative Law Judge ("ALJ") Frank L. Gregori. TR 30-73. Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and testified. *Id.*

On May 24, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11-29. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since May 17, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: lumbosacral spondylosis without myelopathy; lumbosacral radiculopathy; chronic pain syndrome; rheumatoid arthritis; cervicalgia; status post fracture and open reduction internal fixation of right wrist; and mild osteoarthritis of the left shoulder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,

---

[1] Plaintiff amended her alleged onset date at the administrative hearing to May 17, 2010. TR 35.

404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and carry 5 pounds frequently and 15 pounds occasionally. Additionally, the claimant can only occasionally bend at the waist. Furthermore, the claimant can stand and walk for a total of 2 hours in an 8-hour workday with no sitting restrictions.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 2, 1963 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 17, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 16-24.

On June 10, 2013, Plaintiff timely filed a request for review of the hearing decision. TR 8-10. On July 29, 2014, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the

Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d

517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age,

education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[2] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

6

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) improperly evaluating the medical opinion evidence of record; (2) failing to properly consider all of Plaintiff's impairments and find some impairments to be severe, and failing to provide sufficient reasons for not finding those impairments severe; (3) failing to include function-by-function assessment in the Residual Functional Capacity ("RFC") assessment; and (4) failing to assign an RFC consistent with the limitations included in the hypothetical question posed to the VE at the hearing. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Evaluation of the Opinion Evidence

Plaintiff first argues that the ALJ erred by not according proper weight to the opinion of her treating physician, Dr. T. Scott Baker. Docket No. 12-1 at 6. Plaintiff notes that Dr. Baker completed a Physical Medical Source Statement ("MSS") regarding her abilities and limitations and assigned her a "less-than-sedentary" RFC, specifically opining that she would be unable to sit, stand, or walk for a full eight-hour work day; that she would need to "unpredictably" lie down five to six times per day for thirty to sixty minutes at a time; and that she would miss more than four days of work per month due to her conditions. *Id.,* at 8.

Plaintiff argues that the ALJ's stated reasons for rejecting Dr. Baker's opinion (that Dr.

Baker had not treated Plaintiff since 2012 and that Dr. Baker's "extreme limitations were inconsistent with his meager treatment notes") are insufficient reasons for rejecting Dr. Baker's opinion, because, even though Dr. Baker had not treated Plaintiff since 2012, he did treat Plaintiff "on several occasions prior to 2012." *Id.* at 8-9. Plaintiff further argues that the ALJ improperly gave significant weight to the opinion of consultative examiner, Dr. Johnson, who saw Plaintiff on only one occasion, before the last time Dr. Baker had seen Plaintiff. *Id.* Plaintiff contends, therefore, that the ALJ's discounting Dr. Baker's opinion because he had not treated her since 2012 was improper. *Id.* Plaintiff also argues the ALJ failed to cite any specific instances in the record which support his claim that Dr. Baker's "extreme limitations were inconsistent with his meager treatment notes." *Id.* Specifically, Plaintiff argues that Dr. Baker's records reveal tenderness in the thoracic, lumbar, and cervical spine, the administration of trigger point injections, prescriptions for pain medications, and consideration of Plaintiff's subjective complaints. *Id.* Plaintiff maintains that these records support Dr. Baker's opined limitations. *Id.* at 9.

Next, Plaintiff argues that the ALJ erred in according more weight to the opinions of non-treating and non-examining physicians than to the opinion of her treating physician. *Id.* Specifically, Plaintiff maintains that "the ALJ clearly used a double standard when assigning weight to the opinions of non-treating and non-examining physicians over [her] treating source opinion." *Id.* Plaintiff notes that the ALJ gave significant weight to the opinion of Dr. Johnson, who examined Plaintiff on only one occasion, and also explicitly considered the opinions of Dr. Millis and Dr. Cohn, who never examined Plaintiff, but "completely ignored" the opinion of treating physician Dr. Baker. *Id.* Plaintiff contends that this constitutes reversible error because

the ALJ failed to provide sufficient reasons as to why he applied greater scrutiny to the opinion of her treating physician than he applied to the opinions of a consultive examiner and two non-examining medical consultants. *Id.* at 8-10.

In response to Plaintiff's claim that the ALJ improperly evaluated Dr. Baker's opinion, Defendant argues that the ALJ properly found that Dr. Baker's opinion was entitled to little weight because Dr. Baker had not treated Plaintiff since 2012 and because his opinion was inconsistent with the evidence of record. Docket No. 15 at 8-10. Defendant contends that, although Dr. Baker opined that Plaintiff could lift ten pounds occasionally with her left arm and no weight with her right arm (*Id.* at 9, *citing* TR 22, 443), there is no evidence suggesting that Plaintiff could lift no weight with her right arm and Dr. Baker's opinion is inconsistent with other medical records showing that Plaintiff retained full strength (*Id.*, *citing* TR 305, 309, 312, 314, 317, 320, 323, 396-97, 400-01, 406-07, 413, 420, 424, 428, 454). Defendant further contends that the ALJ found Dr. Baker's treatment notes to be inconsistent with his opined limitations because Dr. Baker's notes show that "Plaintiff appeared in no acute distress with normal gait, normal range of motion, full strength, and intact sensation." *Id.*, *citing* TR 411-14, 420-21, 423-24, 427-29. Defendant asserts that Dr. Baker did not identify objective evidence to support his proposed limitations, "but merely recited diagnoses (Tr. 443)." *Id., citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009); 20 CFR § 404.1527(c)(3).

With regard to Plaintiff's assertion that the ALJ improperly accorded greater weight to the opinions of non-treating and non-examining physicians than to her treating physician, Defendant argues that the ALJ did not fully accept the limitations opined by either Dr. Johnson or the state agency medical consultants, and in fact, actually included in his RFC determination

limitations greater than those identified by those doctors. *Id.* at 10, *citing* TR 17, 342-50, 385-94.

Defendant contends that "the ALJ's finding that Plaintiff had different limitations than those identified by the medical sources means the ALJ necessarily scrutinized the medical opinions in the record," as the ALJ could not have rejected portions of the medical opinions had he not scrutinized them. *Id.* Defendant further asserts that, because the ALJ is required to provide good reasons for rejecting a treating physician's opinion, the requirement for greater documentation creates the appearance that the ALJ applied greater scrutiny to Dr. Baker's opinion than to the opinions of the non-treating sources, but does not mean the ALJ applied less scrutiny to other opinions. *Id., citing Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). Defendant argues that the ALJ properly considered the opinions of Dr. Johnson and the state agency medical consultants and found their opinions to be consistent with other substantial evidence in the record. *Id.* at 7-8, *citing Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014); *Rudd*, 531 F. App'x at 729; TR 17, 21-22.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 416.927(d) (emphasis added).  *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

Dr. Baker treated Plaintiff on several occasions between August 2011 and June 2012 (TR 399-441), a fact that could justify the ALJ's according greater weight to his opinion than to other opinions, as long as Dr. Baker's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2).

In his MSS Physical, dated March 20, 2013, Dr. Baker opined that Plaintiff could carry ten pounds occasionally and less than ten pounds frequently using her left arm, but could not carry using her right hand; could sit, walk, and stand for less than two hours in an eight-hour day;

would need to alternate between sitting, standing, and walking at will in order to relieve discomfort; would have to lie down five to six times per day for thirty to sixty minutes per time; could occasionally twist and climb stairs, but could never stoop, crouch, or climb ladders; was limited in her abilities to reach, finger, and push; should avoid all exposure to extreme heat and cold, high humidity, fumes, odors, dusts, soldering fluxes, chemicals, and gases; would need to elevate her legs, rest frequently, and change position frequently; would be unable to lift, bend, and push/pull heavy weight; and would miss more than four days of work per month. TR 443-44.

The ALJ discussed Dr. Baker's treatment of Plaintiff as follows:

> Finally, in August 2011, October 2011, December 2011, March 2012, April 2012, and June 2012, a physical examination revealed that although the claimant alleged tenderness throughout her cervical, thoracic, and lumbosacral spine with positive straight leg raise testing, her paraspinal muscle strength and tone were within normal limits. Additionally, the claimant's upper and lower extremities maintained normal joint stability throughout with full range of motion in here shoulders, hips, and knees bilaterally. Furthermore, aside from some slightly diminished strength with dorsiflexion bilaterally, the claimant maintained full muscle strength throughout her upper and lower extremities bilaterally. Moreover, although during the examinations in April 2012 and June 2012 the claimant was noted to exhibit an antalgic gait pattern, she was able to walk on her toes, heels, and squat and return with only mild difficulty (Exhibit 11F/2-3, 8-9, 15-16, 22-23, 25-26, 30-31).

TR 21, *citing* TR 399-442.

On September 27, 2011, consultative examiner Dr. Roy Johnson examined Plaintiff and rendered a Medical Assessment for Ability to Perform Work-Related Activities opinion regarding Plaintiff. TR 383-85. After examining Plaintiff, Dr. Johnson ultimately opined that

Plaintiff could occasionally lift fifteen pounds; should avoid repetitive bending; could stand and walk no more than two hours with normal breaks during an eight-hour workday; and had no sitting restrictions.  TR 385.

The ALJ discussed Dr. Johnson's examination findings as follows:

> In September 2011, the claimant underwent a consultative examination with Roy Johnson M.D., who indicated that the claimant exhibited some limited range of motion in her dorsolumbar spine with subjective tenderness to palpitation at the T1 through T8 paraspinal area. Additionally, he indicated that the claimant maintained a guarded and short stepped gait but that her station was unremarkable (Exhibit 8F/3).

TR 21, *citing* TR 383-85.

On June 18, 2011, non-examining, state agency physician Dr. James Millis reviewed the medical evidence and completed a Physical Residual Functional Capacity ("RFC") assessment regarding Plaintiff.  TR 342-50.  In his Physical RFC assessment, Dr. Millis opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could stand, walk, and/or sit with normal breaks for a total of about six hours in an eight-hour workday; had an unlimited ability to push and/or pull; and had no postural limitations, manipulative limitations, visual limitations, communicative limitations, and/or environmental limitations.  TR 343-46.  Dr. Millis also noted that he believed that Plaintiff's statements were only partially credible because Plaintiff's range of motion and strength were not restricted to a level that would support her subjective allegations.  TR 347.

On October 16, 2011, non-examining state agency physician Dr. Marvin Cohn also reviewed the medical evidence and completed a Physical RFC assessment regarding Plaintiff. TR 386-94.  In his Physical RFC assessment, Dr. Cohn opined that Plaintiff could lift and/or

carry twenty pounds occasionally and ten pounds frequently; could stand, walk, and/or sit with normal breaks for a total of about six hours in an eight-hour workday; had an unlimited ability to push and/or pull; could occasionally climb stairs and ramps, but could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and had no manipulative limitations, visual limitations, communicative limitations, and/or environmental limitations. TR 387-90.

The ALJ discussed the opinions of Drs. Millis and Cohn as follows:

> . . . the undersigned has considered the administrative findings of fact made by state agency physicians, James Millis, M.D. and Marvin Cohn, M.D., regarding the claimant's physical capacity to perform work-related functions (Exhibit 6F, 9F). The opinions are weighted as statements from non-examining expert sources. Based on the evidence, the undersigned concludes the state agency adequately considered the medical evidence of record regarding the claimant's impairments and significant weight is given to the state agency's opinion, as it is supported by the evidence indicating that although the claimant had regularly elevated rheumatoid levels, she generally maintained full strength, range of motion, and reflexes throughout.

TR 22, *citing* TR 342-50, 386-94.

An ALJ must consider the medical opinion evidence in its entirety. 20 CFR § 416.927(d); 20 CFR § 404.1527(d). As such the ALJ must consider the opinions of treating physicians, consultative examiners, and stage agency non-examining consultants alike. *Id.*; *see also Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). As can be seen, the ALJ in the case at bar has done just that. TR 20-22.

After discussing the medical opinion evidence recounted above, the ALJ explained the weight he accorded to the medical opinions of record and the reasons therefor as follows:

16

As for the opinion evidence, significant weight is given to the consultative examiner, Dr. Johnson, whose opinion is reflected in the residual functional capacity above (Exhibit 8F/3). Significant weight is given to Dr. Johnson as his opinion is supported by the evidence of record indicating that although the claimant had regularly elevated rheumatoid levels, she generally maintained full strength, range of motion, and reflexes throughout (Exhibit 1F/2-3, 17, 3F/2-4, 5F/1, 15).

Additionally, in accordance with Social Security Ruling 96-6p, the undersigned has considered the administrative findings of fact made by state agency physicians, James Millis, M.D. and Marvin Cohn, M.D., regarding the claimant's physical capacity to perform work-related functions (Exhibit 6F, 9F). The opinions are weighted as statements from non-examining expert sources.  Based on the evidence, the undersigned concludes the state agency adequately considered the medical evidence of record regarding the claimant's impairments and significant weight is given to the state agency's opinion, as it is supported by the evidence indicating that although the claimant had regularly elevated rheumatoid levels, she generally maintained full strength, range of motion, and reflexes throughout  (Exhibit 1F/2-3, 17, 3F/2-4, 5F/1, 15). Although the undesigned finds a slightly more restrictive residual functional capacity than the state agency physicians based on the record as a whole, the undersigned reasons that the state agency's findings are consistent with the determination that the claimant is capable of significant work-related activities.

However, little weight is given to the claimant's treating physician, Scott Baker, M.D., who indicated that the claimant was unable to perform even sedentary work and could stand and walk for 2 hours, and sit for 2 hours, total in an 8-hour workday. Additionally, the doctor noted that the claimant would need to lie down at unpredictable intervals 5 to 6 times a day for 30 to 60 minutes at a time. Furthermore, he reported that the claimant had significant postural and environmental limitations and would need to elevate her legs, rest frequently, and change positions frequently. Finally, Dr. Baker noted that the claimant would be absent from work more than four days per month because of her impairments (Exhibit 12F/1-2). Little weight is given to this overly restrictive opinion as it is simply not supported by the evidence of record indicating that although the claimant had regularly elevated rheumatoid levels, she generally maintained full strength, range of motion, and reflexes

throughout (Exhibit 1F/2-3, 17, 3F/2-4, 5F/1, 15). Furthermore, the claimant testified that she has not seen Dr. Baker since July 2012, and the record shows that his office notes are meager and simply do not support such extreme limitations.

TR 21-22, *citing* TR 263-93, 303-06, 309-41, 342-51, 384-85, 386-95, 443-44.

In addition to considering the opinion evidence quoted above, the ALJ discussed

Plaintiff's medical evidence and treatment records as follows:

Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. On May 17, 2010, the date of the claimant's amended alleged onset of disability, the claimant visited urgent care for a physical and pap smear. Medical records from her visit indicate that the claimant was "very active and works full-time" (Exhibit 1F/1). Additionally, a physical examination revealed that the claimant's spine showed no abnormalities and was negative for posterior tenderness. Additionally, the claimant was noted to maintain normal flexion, extension, and lateral flexion throughout her back. Furthermore, her cervical spine revealed no tenderness and maintained normal mobility and curvature (Exhibit 1F/2-3). Moreover, although laboratory testing showed an elevated rheumatoid factor at 35, the claimant maintained full range of motion throughout her shoulders, hips, knees, and feet bilaterally with no joint deformity, heat, swelling, or effusion (Exhibit 1F/2-3, 17). Additionally, an x-ray of her thoracic spine showed only mild degenerative disk disease, and an x-ray of her cervical spine was unremarkable (Exhibit 1F/28-29). Furthermore, an x-ray of her right shoulder revealed only mild acromioclavicular overgrowth with no other evidence of any abnormality (Exhibit 1F/30).

Additionally, although laboratory testing from July 2010 again revealed an elevated rheumatoid factor of 28, a physical examination conducted at the time revealed that the claimant maintained full range of motion in all joints with normal reflexes and strength throughout (Exhibit 1F/9, 2F/5, 5F/1). Furthermore, a subsequent examination in August 2010 yielded similar results (Exhibit 5F/4). Moreover, x-rays of the claimant's left hand were unremarkable and her right hand showed evidence of only mild meta carpal joint space narrowing caused by early inflammatory

arthritis (Exhibit 5F/18-19). Additionally, although the claimant consistently complained of paraspinal muscle tenderness in her mid-back, an MRI of her thoracic spine conducted in October 2010 revealed no focal disc protrusion or canal and foraminal impingement. In fact, the MRI showed that the spinous process were intact and that the facet joints paraspinal musculature were normal (Exhibit 2F/9, 5F/1, 4).

By November 2010, the claimant underwent a consultation at the Center for Spine, Joint, and Neuromuscular Rehabilitation where a physical examination revealed that the claimant had decreased range of motion of her left shoulder and hip secondary to pain and stiffness. Additionally, the claimant had some mild swelling in her fingers as well as tenderness in her thoracic spine and left triceps tendon. However, the claimant exhibited a normal gait with symmetric manual muscle testing and reflexes (Exhibit 7F/2). Additionally, x-rays of her left hip and left elbow were unremarkable, and an x-ray of her left shoulder revealed only mild oseoarthritic changes in acromioclavicular joint (Exhibit 7F/7-9).

In February 2011, physical examination revealed that although the claimant had some mild synovitis with painful range of motion in her left elbow, the claimant had full range of motion in her hips and her extremities exhibited no clubbing, edema, or cyanosis. Additionally, the claimant was noted to maintain full reflexes and muscle strength bilaterally (Exhibit 5F/12).

Furthermore, in May 2011, the claimant visited the doctor after cutting her hand on a piece of glass while washing dishes. A physical examination of the claimant's hand revealed marked tenderness with only mild swelling present. Additionally, although the claimant was positive for Tinel's at the scar in the radial nerve distribution, she maintained full range of motion and strength throughout her hands bilaterally as well as throughout her right and left upper extremity (Exhibit 3F/2-4). Moreover, an x-ray of the calamint's right hand reveled no soft tissue abnormalities, fractures or bone lesions, and she maintained normal alignment, joint spaces, and bone density (Exhibit 3F/4).

Additionally, in June 2011, a physical examination reveled that although the claimant exhibited paraspinal muscle tenderness in her mid-back with painful range of motion at the left elbow, her extremities exhibited no clubbing, cyanosis, or edema.

Additionally, the claimant maintained normal reflexes and muscle strength throughout (Exhibit 5F/15). Furthermore, an electrodiagnostic study reveled evidence of only mild chronic S1 radiculopathy on the left as well as mild left carpal tunnel syndrome and sensory neuropathy (Exhibit 7F/23). By late June 2011, a physical examination of the claimant's upper extremities reveled normal range of motion and full strength bilaterally (Exhibit 10F/1-2).

TR 20-21, *citing* TR 263-93, 294-302, 303-06, 309-41, 352-82, 396-98.

The ALJ also considered Plaintiff's subjective allegations and discussed how her

allegations conflicted with her activities and the opinion evidence:

The claimant alleges that she suffers from medical conditions that cause her to experience headaches, severe pain throughout her body, numbness and tingling in her legs and right hand, and difficulty sitting, standing, walking, kneeling, lifting, squatting, bending, reaching, stair climbing, completing tasks, and using her hands (Exhibit 4E/6). Specifically, the claimant testified that she has difficulty addressing her personal care needs, and can sit for approximately 50 minutes at a time and stand or walk for 15 minutes at a time. Additionally, in her function report, the claimant indicated that she does not prepare meals or engage in hobbies (Exhibit 4E/3, 5).

Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. In fact, there are internal inconsistencies with the claimant's own function report that call into question what activities the claimant is able to perform. For example, the claimant indicated that she does no household chores, and then subsequently indicated that she does very light household chores. Then, the claimant reported she spends all day doing chores (Exhibit 4E/3). Additionally, the claimant indicated that when she travels she rides in the car. However, when asked if she drove a car, she reasoned "not all the time" suggesting that the claimant does drive a car. Moreover, the claimant reported that she goes grocery shopping, but is unable to count change, use a checkbook, or pay bills (Exhibit 4E/4).

Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's activities of daily living are self-restricted, as no treating source has advised the claimant to restrict activities of daily living. Therefore, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

. . .

After careful consideration of the evidence, the undesigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained below in this decision.

TR 19, *citing* TR 194-201.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

While Dr. Baker treated Plaintiff in 2011 and 2012, a fact that could justify the ALJ's accordation of greater weight to his opinion than to other opinions if his opinion was properly supported by, and consistent with, the evidence of record, as is seen in the ALJ's discussion recounted above, Dr. Baker's opinion was unsupported by, and conflicted with, other medical

evidence in the record. Because Dr. Baker's opinion contradicted other evidence, the

Regulations do not mandate that the ALJ accord Dr. Baker's evaluation controlling weight.

Moreover, since an ALJ may consider the opinions of non-treating physicians and non-examining

physicians designated by the Secretary in determining whether a claimant has medically

determinable impairments, the ALJ acted appropriately when he also considered the opinions of

Drs. Johnson, Millis, and Cohn. *See Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927,

930 (6th Cir. 1983). Plaintiff's arguments on these points fail.

## 2. Consideration of All Impairments

Plaintiff next argues that the ALJ erred by failing to consider all of her impairments and

find some impairments to be severe, and by failing to provide sufficient reasons for not finding

those impairments severe. Docket No. 12-1 at 10. Specifically, Plaintiff argues that, in addition

to the severe impairments discussed in the ALJ's decision, Plaintiff had also been diagnosed with

thoracic degenerative disc disease, headaches, chronic S1 neuropathy on the left, mild carpal

tunnel syndrome, and sensory neuropathy. *Id.* at 10-11. Plaintiff maintains that the ALJ failed to

properly consider these impairments, which she asserts were diagnosed and well-documented in

the record, and constitute severe impairments. *Id.* at 11, *citing Higgs v. Bowen*, 880 F.2d 860,

862 (6th Cir. 1988). Plaintiff contends that the ALJ's failure to find these impairments severe

and failure to sufficiently state why he did not find these additional impairments to be severe

constitutes grounds for reversal or remand. *Id.*

Defendant argues that since the ALJ found at least one severe impairment at step two of

the sequential evaluation, continued through the remainder of the sequential evaluation, and

"considered the impairments in combinations" during step four of the sequential evaluation, the

ALJ's failure to find additional severe impairments does not constitute reversible error. Docket No. 15 at 5. Defendant maintains that because the ALJ completed the five step evaluation process, the ALJ properly considered the limitations and restrictions imposed by all of Plaintiff's impairments (both severe and non-severe), such that the ALJ's failure to find additional severe limitations cannot constitute grounds for reversal or remand. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a *de minimis* hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec. of Health and Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations, rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons*

*v. Comm'r of Soc. Sec.*, No. 310-cv-502,WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Determining a claimant's limitations for purposes of establishing an RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).

With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

At step two of the sequential evaluation process, the ALJ in the instant action found that Plaintiff had the following severe impairments: lumbosacral spondylosis without myelopathy, lumbosacral radiculopathy, chronic pain syndrome, rheumatoid arthritis, cervicalgia, status post fracture and open reduction internal fixation of right wrist, and mild osteoarthritis of the shoulder. TR 16. Because the ALJ found that Plaintiff had at least one severe impairment, he appropriately proceeded to complete each of the subsequent steps of the sequential evaluation

process, during which he properly considered Plaintiff's severe and non-severe impairments. TR 16-22. Since the ALJ found that Plaintiff had at least one severe impairment and properly completed the sequential evaluation process, the ALJ's failure to find additional impairments to be severe cannot constitute grounds for reversal or remand; Plaintiff's argument on this point fails.

### 3. Function-by-Function Assessment

Plaintiff next argues that the ALJ erred by failing to include a function-by-function assessment in the RFC as required by SSR 96-8p. Docket No. 12-1 at 11. Plaintiff maintains that SSR 96-8p's requirement for a function-by-function assessment mandates that the ALJ must separately consider Plaintiff's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* Plaintiff contends that the ALJ's finding that she retained the RFC to perform sedentary work with the additional limitations of lifting and carrying only five pounds frequently and fifteen pounds occasionally, only occasionally bending at the waist; and standing and walking for a total of only two hours in an eight-hour workday with no sitting restrictions, does not satisfy SSR 96-8p's requirements because the ALJ's decision does not include a function-by-function assessment. *Id.* at 12. Plaintiff further argues that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record."[4] *Id.* Plaintiff argues, therefore, that the case should be remanded for proper evaluation of Plaintiff's RFC. *Id.*

---

[4] Plaintiff did not mention the specific limitations she asserts the ALJ forgot. In a previous statement of error, however, Plaintiff argued that the ALJ did not provide any limitations to account for severe impairments involving her right wrist and left shoulder, and that the ALJ did not include any manipulative limitations pertaining to these impairments in the RFC. *Id.* at 11.

Defendant argues that while the ALJ's decision does not contain a function-by-function evaluation, the ALJ is not required to discuss capacities for which no limitation is alleged. Docket No. 15 at 5, *citing Delgado*, 30 F. App'x at 547. Defendant also maintains that SSR 96-8p states that the ALJ must consider each function separately; it does not require the ALJ to discuss each function separately in the narrative of the decision. *Id., citing Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, *11 (E.D. Tenn., July 9, 2014). Defendant contends that "there is a difference between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id., citing Delgado*, 30 F. App'x at 547.

Defendant also asserts that the ALJ must only incorporate the limitations he deems credible. *Id.* at 6. Defendant argues that the ALJ properly did so. *Id.* Responding to Plaintiff's claim that the ALJ failed to include limitations stemming from Plaintiff's right wrist and left shoulder, Defendant argues that the ALJ did not err because: (1) Dr. Johnson and the state agency medical consultants did not find manipulative limitations; and (2) the ALJ restricted Plaintiff to lifting only five pounds frequently and fifteen pounds occasionally. *Id.* at 8.

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Beason v. Comm'r of Soc. Sec.*, 2014 WL 40463380, 13 (E.D. Tenn. 2014) (*quoting Delgado*, 30 Fed. Appx. at 547)). Significantly, SSR 96-8p states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the narrative of the decision. The Sixth Circuit has held that an ALJ's RFC assessment complies with SSR 96-8p so long as the RFC specifies the claimant's exertional and nonexertional limitations. *Id.* In so doing, the ALJ

need only explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform work related activities, and explain the resolution to any inconsistences in the record. *Delgado*, 30 Fed. Appx. at 548.

In the case at bar, the ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's testimony and reported level of activity, determined that Plaintiff retained the RFC to perform:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and carry 5 pounds frequently and 15 pounds occasionally. Additionally, the claimant can only occasionally bend at the waist. Furthermore, the claimant can stand and walk for a total of 2 hours in an 8-hour workday with no sitting restrictions.

TR 17.

As shown in the previous statements of error, the ALJ properly evaluated the evidence and incorporated the restrictions he felt were consistent with, and supported by, the evidence of record. Moreover, the ALJ discussed Plaintiff's exertional and nonexertional limitations and properly explained how the evidence in the record supports his conclusion. The Regulations do not require more. The ALJ's RFC determination was proper; remand is not warranted. Plaintiff's claim that this action must be remanded because the ALJ failed to perform a function-by-function assessment fails.[5]

---

[5] Additionally, although Plaintiff contends that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record," Plaintiff fails to explain which "substantial limitations" that "were well-documented in record" the ALJ omitted from his RFC finding. To the extent that Plaintiff contends that the ALJ failed to include any manipulative limitations pertaining to her right wrist and left shoulder, this claim fails because: (1) Drs. Johnson, Millis, and Cohn did not opine that Plaintiff had any manipulative limitations (TR 21-22, 345, 385, 389); and (2) the ALJ nevertheless restricted Plaintiff to lifting five pounds frequently and fifteen pounds occasionally

**4. Reliance on a Hypothetical Question**

Plaintiff argues that the ALJ assigned an RFC inconsistent with the limitations posed to the VE at the hearing. Docket No. 12-1 at 12. Specifically, Plaintiff argues that the ALJ posed a hypothetical that included a limitation of "no repetitive bending," but assigned an RFC in the decision that includes the limitation of "occasionally bending at the waist." *Id.* Plaintiff maintains that "a limitation to only occasional bending appears more limiting than 'no repetitive bending.'" *Id.* Plaintiff contends that this additional limitation may have affected her ability to perform the jobs identified as appropriate by the VE. *Id.* Plaintiff argues that the case should be remanded for clarification on this issue. *Id.*

Defendant argues that, in response to a hypothetical question incorporating the limitations found in the RFC, the VE testified that a person with those limitations could work as a telephone clerk, an assembler, and a cashier. Docket No. 15 at 12. Defendant asserts that Plaintiff's argument that "repetitive bending" is different from "occasional bending" is "based on an incomplete reading of the hypothetical question." *Id.* at 13. Defendant contends that the ALJ actually stated, "this person should avoid repetitive bending, so this person should do no more than occasional bending at the waist." *Id.*, *quoting* TR 69. Defendant argues that the ALJ defined "avoid repetitive bending" as "no more than occasional bending" and used that definition in the RFC. *Id.*, *citing* TR 17. Defendant contends, therefore, that there is no inconsistency and that the ALJ properly relied on the VE's answer to that hypothetical question. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a

_____

(TR 17).

significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity.  20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations.  *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983).  In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations.  *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ asked the VE the following:

> Q    All right.  Let me give you a second hypothetical.  This residual functional capacity, hypothetical number two, is based on Exhibit 8F, essentially 8F, the consultative examination that was performed by Dr. Roy Johnson on September 27, 2011. . . . Essentially this person can perform sedentary, no more than sedentary work activity.  More specifically, this person can frequently lift and carry no more than 5 pounds, and occasionally lift and carry no more than 15 pounds.  *This person should avoid repetitive bending, so this person should do no more than occasional bending at the waist.*  This person can stand or walk no more than a total of two hours in an eight hour workday; and essentially has no sitting restrictions; can sit unlimited.

Given that residual functional capacity, would the claimant be able to perform any of her prior work activities?

A     No. Past work would be ruled out, your honor.

Q     All right. Assuming a person the same age, education, and work experience as the claimant, and has the residual functional capacity that I just described to you in hypothetical number two, would such a person be able to perform any occupations existing in the national economy?

A     There would be jobs, your honor. They would basically would be [*sic*] found at the sedentary level. If you'd like some examples, I can provide some.

Q     Please.

A     One such job would be that of telephone clerk. . . . Tennessee, in excess of 1400; U.S. in excess of 59,000. Another such job that would meet those criteria is assembler. This is sedentary also. . . . Tennessee, in excess of 2100; U.S., in excess of 93,000. And a further example of such work would be that of cashier at sedentary. . . . Tennessee, in excess of 3000; U.S. in excess of 124,000.

Q     Is your testimony consistent with the Dictionary of Occupational Titles?

A     Yes, it is.

TR 68-70 (emphasis added).

The ALJ ultimately assigned an RFC that limited Plaintiff to occasional bending. As can be seen above, the ALJ explained that "avoiding repetitive bending" meant limiting Plaintiff to only occasionally bending at the waist. TR 69. The hypothetical question posed at the hearing therefore corresponds with the RFC the ALJ assigned. *See* TR 17, 69. Plaintiff's claim that the ALJ used different terminology in his hypothetical question than he ultimately used is based upon an incomplete reading of the hypothetical. The ALJ's hypothetical question was proper;

30

accordingly, he could rely upon the VE's answer to that hypothetical question to establish the existence of a significant number of jobs in the economy that Plaintiff could perform. Plaintiff's contention on this point fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge